IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DEONA HARVELL, )
 )
       Plaintiff, )
 )
 ) Case No. CIV-19-109-RAW-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
       Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Deona Harvell (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 52 years old at the time of the decision. She has a high school education. She worked in the past as a loan clerk. She alleges an inability to work beginning October 17, 2016, due to limitations resulting from depression, Charcot foot, diabetic ulcers, uncontrollable diabetes, high blood pressure, and neuropathy.

### Procedural History

On October 17, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On May 18, 2018, Administrative Law Judge("ALJ") James Stewart conducted

a video hearing, presiding from Tulsa, Oklahoma. Claimant appeared from Bartlesville, Oklahoma. On June 29, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on February 4, 2019, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a loan clerk, as it is generally performed in the national economy.

### Errors Alleged for Review

Claimant asserts the ALJ committed error because: (1) he ignored the testimony of the vocational expert ("VE") based upon his own finding that Claimant required a "straight sit-down job" and (2) he failed to properly consider the findings by consultative physician Adam Wahlstrom, D.O., in the RFC.

### Consideration of Vocational Expert Testimony

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus, diabetic peripheral neuropathy, obesity, and Charcot foot. (Tr. 19). He determined Claimant could perform work at the sedentary exertional level, with additional

4

limitations. Specifically, Claimant could push and pull with her upper extremities less than ten pounds frequently and ten pounds occasionally. She could not use foot controls. Claimant could not climb ladders, ropes, or scaffolds, but she could occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. She could handle and finger frequently. Claimant could not be exposed to unprotected heights, open flames, dangerous machinery (not all machinery is dangerous, such as machinery where moving parts are shielded), or other hazardous conditions. She could not work in environments with elevated (defined as concentrations in excess of that normally found in modern office buildings or light manufacturing facilities) levels of vibration or extreme heat, cold, humidity, or wetness. (Tr. 22-23).

After consultation with a VE, the ALJ determined Claimant could return to her past relevant work as a loan clerk, as the job was generally performed in the national economy. (Tr. 28). As a result, the ALJ concluded Claimant was not under a disability from October 17, 2016, through the date of the decision. (Tr. 28).

Claimant contends her administrative hearing was unfair. She argues the ALJ determined at the hearing that she was limited to a "straight sit-down job" and the central issue of her case was whether she could perform any work with such a limitation. She asserts that the ALJ conducted the entire hearing on the premise "that [Claimant] could not tolerate a standard sedentary job that

5

requires at least 2 hours of walking a day." Claimant maintains that counsel relied on the ALJ's limitation to a "straight sit-down job" throughout the hearing.

An agency hearing to determine eligibility for social security benefits is subject to the protections of procedural due process. *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983). Due process requires that a claimant receive a "full and fair" hearing. *Bush v. Apfel*, 34 F. Supp. 2d 1290, 1298 (N.D. Okla. 1999), citing *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971). There is a presumption that the ALJ is unbiased. *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001), citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

At the hearing, the ALJ stated that he believed the issue in the case was whether Claimant was "capable of doing sedentary work." (Tr. 50). He noted Claimant left her job as a loan clerk because of problems with her feet, but she was performing the job at the light exertional level, not as a sedentary job. He stated that he believed she had to be able to perform the loan clerk job at the sedentary level or there had "to be transferable skills to some other job where she could do a straight sit-down job." (Tr. 51). However, the ALJ immediately followed this statement by noting that, "I haven't really made up my mind on the issue." *Id*. He further acknowledged Claimant had difficulty walking due to certain impairments, but he again indicated he had not made up his

mind. (Tr. 51-52). He concluded his statement with the following:

> I generally don't rule from the bench. And this case is definitely not one that I'm going to change that practice on. So please go ahead and take your claimant on direct and develop the argument; give me your theory of the case, and we'll proceed from there afterwards to the vocational expert.

(Tr. 52).

Claimant was not denied a fair administrative hearing. Similar to *Conkle v. Astrue*, 487 Fed. Appx. 461 (10th Cir. 2012), cited by the Commissioner, the ALJ made statements about the case during the administrative hearing. *Id*. at 461-62. However, even more so than the ALJ in *Conkle*, ALJ Stewart explicitly clarified his statements by affirming he had not made up his mind, he generally did not rule from the bench, and he did not intend to make an exception in Claimant's case. He then directed Claimant's counsel to develop his argument and provide his theory of the case. (Tr. 50-52).

Claimant also argues that although the ALJ included the "straight sit-down job" as a limitation in the hypothetical questions posed to the VE, contrary to his indication at the hearing, he ignored the VE's testimony and ultimately concluded Claimant could perform sedentary work and her past work as a loan clerk. She contends the ALJ erred by failing to adopt the VE's testimony in response to the hypothetical question including the "straight sit-down job" limitation.

7

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

There is no error in the ALJ's RFC determination as it relates to the hypothetical questions posed to the VE. Although the ALJ included a limitation to a "straight sit-down job" in one of the hypothetical questions posed to the VE, he ultimately adopted the VE's response to another hypothetical question which encompassed those limitations included in his RFC determination. (Tr. 22-23, 61-62). *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

8

**Consideration of Consultative Examiner's Findings**

Claimant next contends the ALJ failed to properly account for the findings of consultative examiner Dr. Wahlstrom in the RFC. Specifically, Claimant argues the ALJ failed to account for Dr. Wahlstrom's opinion that she suffered from an unstable gait with slowed speed in the RFC. She contends her unstable gait precludes her from performing the sedentary work requirements of standing/walking for two hours in an eight-hour workday.

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Dr. Wahlstrom conducted a physical consultative examination of Claimant on May 31, 2017. Upon examination, he noted Claimant's peripheral pulses in her extremities were adequate. He found her great toe strength was 4/5 on the right and 3/5 on the left and sensation was diminished bilaterally in the lower extremities, more pronounced on the left. Straight leg raising in the seated and supine positions was negative bilaterally, and toe and heel

walking was abnormal bilaterally. Claimant ambulated with an unstable gait at a slowed speed without the use of an assistive device. Dr. Wahlstrom assessed Claimant as presenting with complications of diabetes mellitus. He concluded she had significant neuropathy on examination with loss of proprioception and some instability when walking or attempting to maintain balance. She suffered edema in the lower extremity, signs of kidney disease, decreased grip strength, and some loss of strength in her lower extremities. (Tr. 529-33).

The ALJ discussed Dr. Wahlstrom's examination findings in the decision. He noted Claimant's reported problems with pain, loss of sensation, and loss of strength in her arms and legs. He referenced her reports of foot ulcers and edema to Dr. Wahlstrom. He discussed Dr. Wahlstrom's findings that Claimant's grip strength and toe strength were decreased bilaterally, she had loss of sensation in her lower extremities bilaterally with edema in the lower extremity, and her fine tactile manipulation was normal, but her toe and heel walking were abnormal. (Tr. 24-25). The ALJ later noted that Dr. Wahlstrom's examination showed decreased grip strength and lower extremity edema, but the findings appeared to be "an anomaly, as later examinations were routinely normal, except for ulcers on the claimant's left foot and her right foot deformity." (Tr. 26).

10

Although the ALJ did not explicitly mention Claimant's gait in his step-four discussion of Dr. Wahlstrom's findings, he clearly considered Claimant's unstable gait in the RFC assessment. The ALJ specifically explained that Claimant was limited to sitting for six hours in an eight-hour workday and standing/walking for two hours in an eight-hour workday because of her neuropathic pain and reduced sensation in her lower extremities, right foot pain and deformity, left foot ulcers, and obesity. He found she could not climb ladders, ropes, or scaffolds, because of balance issues, obesity, left foot ulcers, reduced sensation and neuropathic pain in the lower extremities, and right foot pain and deformity. Claimant could only occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs because of balance and gait issues, obesity, reduced sensation and neuropathic pain in the lower extremities, and right foot pain and deformity. Claimant could not be exposed to unprotected heights, open flames, dangerous machinery, or other hazardous conditions, because of her balance and gait issues and decreased sensation in the bilateral lower extremities. (Tr. 27).[2]

---

[2] Another indication that the ALJ accounted for Claimant's unstable gait in the RFC is apparent from the ALJ's discussion of the opinion from state agency reviewing physician Emily Eisenhauer, M.D. Dr. Eisenhauer reviewed the record, including the examination by Dr. Wahlstrom. In her review of the examination, she included Dr. Wahlstrom's finding that Claimant ambulated with an unstable gait at a slow speed without the use of an assistive device. (Tr. 89-90). The ALJ assigned partial weight to Dr. Eisenhauer's opinion, which included a limitation that Claimant should avoid concentrated exposure to hazards. The ALJ

11

Moreover, as the Commissioner points out, Dr. Wahlstrom did not opine on the degree of any functional limitations associated with his examination findings. *Duncan v. Colvin*, 608 Fed. Appx. 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by [claimant's doctor] and there were no medical opinions regarding [claimant's] work-related functional limitations, there was no opinion on such matters by [claimant's doctor] for the ALJ to weigh."). Thus, there is no error by the ALJ with respect to the assessment of Dr. Wahlstrom.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

---

disagreed with that portion of the opinion, instead finding that "Claimant should avoid all exposure to hazards due to decreased sensation in the bilateral lower extremities and balance/gait issues." (Tr. 27).

DATED this 11th day of June, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE